JOHN E. THOMAS *et al.*

*v.*

JAMES F. THOMAS *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*when property must be regarded as intestate estate.* Where a provision in a will directs the executors to reduce to money all property not disposed of by previous clauses and distribute the proceeds, but expressly excepts certain property, which latter the executors are directed to lease for ten years after the testator's death and until his widow dies or re-marries, and to distribute the proceeds thereof (meaning the rents) as specified in the preceding clause, there being no other provision for its final disposition, such property is intestate estate and does not pass to the executors for sale under the preceding clause, particularly where the latter construction would defeat the testator's general plan to reduce the widow's share if she re-married and to exclude her descendants by her first marriage from participating in the estate.

2. SAME—*clause of will construed as not authorizing sale by executors.* A direction that certain described property shall be leased by the executors for ten years "and until testator's wife dies or re-marries," etc., and after paying taxes, etc., "to distribute and divide the net proceeds" according to directions for distribution contained in a prior clause of the will relating to property which was to be sold, refers to a distribution of rents only, and authorizes no sale of the property by the executors.

APPEAL from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

On December 15, 1894, John Thomas, a resident of St. Clair county, departed this life testate, leaving an estate composed principally of realty. His will, dated January 2, 1881, a codicil dated March 20, 1882, and a codicil dated February 28, 1884, were on January 23, 1895, duly admitted to probate by the probate court of St. Clair county. The will consists of twenty-one clauses. By clauses 1 to 15, inclusive, excepting clauses 11, 13 and 14, the testator makes specific devises of land to his children and grandchildren.

By clause 11 a promissory note is bequeathed to a grandson, and by clauses 13 and 14 specific sums of money are bequeathed to a granddaughter and grandson, respectively. By clause 16 he devises to his wife, for and during her natural life, so long as she remained unmarried after his death, certain lands, but upon the death or re-marriage of his wife said lands were to be disposed of by his executors in the manner directed in the eighteenth clause. By clause 17 he gives to his executors all the rents, issues and profits of his property to become due on or before the first day of August next after his death, and that portion of all crops growing on his land at the time of his death which but for his death would have gone to him, also that portion of the wheat crop grown on his land in the year in which he died which but for his death would have gone to him, all to be disposed of according to clause 18. Clause 18 is as follows:

"I direct my executors to reduce to money, at public or private sale, at such time or times and in such manner and upon such terms as they may deem best for the interest of my estate, all my property, of every kind and nature soever, not otherwise specifically bequeathed or devised hereby, and all property which, by the happening of any contingency in this will mentioned, may revert to my estate, except the property described in clause 19 hereof, and except, also, the furniture and fixtures in the Thomas house, and, after deducting all proper charges, costs and taxes, to pay first my funeral expenses and just debts, and the balance to divide between such and so many of the following named persons as do not in any manner contest the validity of this will,— that is to say, to my wife one-fourth and the balance in equal parts to my children, George D. Thomas, James F. Thomas, Martha J. Holliday, Isabella I. Stafford, Malvina V. Lemen, Mary Thomas, Caroline Thomas and John E. Thomas: *Provided,* that this clause shall not be construed as directing the sale of any notes or mortgages: *And provided further,* that upon the death of any of the same persons who shall

not have taken any steps to contest or dispute the validity of this will, that portion of his or her share not paid to him or her shall go to his or her heirs-at-law."

Clause 19 is as follows:

"I direct my executors to lease for ten years after my death and until my wife dies or marries, upon such terms and for such times, within said limitation, as they may think best, the following described property situated in the county of St. Clair and State of Illinois, to-wit: The east half of lot 32 and the east half of lot 33, and the west half of lot 29 and part of the east half of lot 29, commencing the survey thereof at the south-east corner of said lot, thence west fifty-five feet, thence north sixty-six feet, thence east to High street, thence south to the place of beginning, and part of the east half of lot 34, being fifty-five feet on First North street and fifty feet on High street, all in the original town (now city) of Belleville; and after paying all proper taxes, assessments, repairs and insurance, and the proper costs and charges of executing this trust, as far as the land described in this clause is concerned, to distribute and divide the net proceeds according to the distribution directed in clause 18 hereof and subject to all the restrictions, conditions and limitations therein named."

By clause 20 of the will it is provided that if any of the persons mentioned in the will shall attempt, by or in any sort of legal proceedings in any court, to call in question or contest the validity of the will, the property thereby given to such person shall revert to the estate and shall be disposed of as directed by clause 18 thereof. By clause 21 the testator nominated his nephew, Charles W. Thomas, and his sons James F. Thomas and John E. Thomas, executors of the will, and empowered any two of his executors, in case of differences, to execute any and all of the trusts imposed upon the executors.

The first codicil to the will amends certain clauses not material here to be noticed, and amends clause 21 by adding

the name of testator's son-in-law, Morris Lewis, as one of the executors. The second codicil amends clauses 14, 16 and 21 of the will. The amendment to the sixteenth clause consists in providing that his wife shall also have the use and occupation of the house in which the testator then resided and the lot on which it stands, in the city of Belleville, so long as she lives a widow after his death. The amendment to the twenty-first clause consists in revoking the appointment of Charles W. Thomas as one of the executors, and providing that the executors shall consist of the testator's sons John E. Thomas and James F. Thomas, and his son-in-law, Morris Lewis.

The testator was married twice. By his first wife he had seven children. By his second wife he had three children. James F. Thomas, one of the executors and one of the appellees in this case, is a son of the first wife; John E. Thomas, another of the executors and one of the appellants, is a son of the second wife; and Morris Lewis, the third executor and the other appellant, married Mary Thomas, a daughter of the second wife. Two of the children by the first marriage died before the testator and before the execution of his will, leaving children. On June 21, 1903, Magdalena Thomas, the widow of the testator, died intestate, leaving her surviving, as her only heirs, Kate A. Heidinger (*nee* Holdner) and Fred Holdner, children by her first marriage, and Mary Lewis, Caroline Thomas Alexander and John E. Thomas, children by her second marriage. Kate A. Heidinger died on June 10, 1905, leaving two children as her heirs.

The persons nominated by the testator in the second codicil were appointed executors of the will by the county court of St. Clair county immediately after the will was admitted to probate. On November 29, 1905, John E. Thomas and Morris Lewis, two of said executors, filed their bill in the circuit court of St. Clair county praying for the construction of certain clauses of the will and for other relief.

James F. Thomas, the other executor, the living devisees and legatees named in the will, the heirs of John Thomas, deceased, the heirs of Magdalena Thomas, deceased, and others in possession of the premises described in said will, were made defendants.   Afterwards, on October 8, 1906, an amended bill was filed, which, after setting out the above facts and the deaths and heirship of certain devisees named in the will, alleges that more than ten years have elapsed since the death of said John Thomas, and the said Magdalena Thomas, the widow, being dead, it is the duty of the executors to sell the real estate described in the sixteenth and nineteenth clauses of said will, but that the executors are unable to agree upon what is the true and correct meaning of said will in reference to the sale and distribution of the proceeds of the real estate described in the nineteenth clause thereof;  that complainants contend that the title to said real estate is vested by the will in the executors, in trust, to be sold at public or private sale and the net proceeds therefrom to be distributed and divided according to the distribution directed in the eighteenth clause of the will, while James F. Thomas, the other executor, insists that the title to said real estate is not in the executors for the purposes mentioned, but is in the heirs-at-law of John Thomas, deceased;  that as to such real estate said John Thomas died intestate, and that the executors have no interest therein and have no right to sell said real estate or to distribute the proceeds thereof among the persons mentioned in said eighteenth clause.   The bill then alleges that complainants, as two of the executors, have made repeated efforts to sell said real estate, but have been unable to sell the same, or any part thereof, on account of the refusal of James F. Thomas to join in the execution of the deed or deeds of conveyance.   The prayer of the bill is that the court will ascertain and adjudge the true meaning of said will, and enter a decree directing all of said executors to join in selling and executing deeds of conveyance for the transfer of

said real estate to such persons as may purchase the same at public or private sale, in accordance with the provisions of the eighteenth clause, and after paying all taxes; assessments, repairs and insurance, and the costs and charges of carrying out the provisions of said will, to distribute and divide the net proceeds according to the distribution directed by the testator in the eighteenth clause of said will, and that the complainants be authorized and directed to perform said duties and execute said trust in case of the neglect or refusal of James F. Thomas to join with them therein.

Certain of the defendants interposed a general and special demurrer to the bill, one of the special grounds of demurrer being, that the title to the real estate described in clause 19 of the will is vested in the heirs of John Thomas, deceased, and not in his executors.

The circuit court rendered a decree sustaining the demurrer and dismissing the bill as to that portion thereof calling in question the nineteenth clause of the will, the court holding that the title to the real estate described in that clause descended to the heirs of John Thomas, deceased, as intestate property, and did not vest in the executors of his will, in trust, for the purpose of making sale and distribution according to the provisions of the eighteenth clause. John E. Thomas and Morris Lewis, the complainants below, have prosecuted an appeal to this court, and have assigned as error the action of the court in sustaining the demurrer and dismissing the bill as to that portion of the real estate described in the nineteenth clause of the will, and in holding that the said real estate descended to the heirs of John Thomas, deceased, as intestate property.

J. M. HAMILL, for appellants.

WINKELMANN & OGLE, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The controversy in this case is over the construction of the eighteenth and nineteenth clauses of the will of John Thomas, deceased. By the nineteenth clause the executors of the will are directed to lease for ten years after the death of the testator, and until the death or re-marriage of his widow, certain real estate, and, after paying taxes, assessments, repairs, insurance and the costs and charges of executing the trust in reference to said real estate, to distribute the net proceeds according to the distribution directed in the eighteenth clause. By the eighteenth clause the executors are directed to sell at public or private sale, "at such time or times and in such manner and upon such terms" as they may deem best for the interests of the estate, all the testator's property not otherwise specifically bequeathed or devised by the will and all property which by the happening of any contingency in the will mentioned may revert to the estate, "except the property described in clause 19 hereof," and certain other property, and, after deducting costs and taxes and paying funeral expenses and debts, to divide the balance between the widow and eight children of the testator, the widow to receive one-fourth of such balance and the other three-fourths to be divided equally among the eight children. In case of the death of any of the persons mentioned in this clause, that portion of his or her share not theretofore received by him or her is to be paid to his or her heirs-at-law.

Appellants contend that by these two clauses the title to the real estate described in the nineteenth clause is vested in the executors of the will, in trust, to be by them sold after the expiration of the period during which they are to lease the same, and that the proceeds are to be divided according to the distribution directed in the eighteenth clause. Appellees, on the other hand, insist that the fee of said real estate was not disposed of by the will, but descended to the

heirs of John Thomas, deceased, as intestate property, subject to the right of the executors to lease it for the period mentioned, and that the widow of the testator having died and ten years having elapsed since the death of the testator, the executors have no further authority or control over said real estate. The circuit court adopted the construction contended for by appellees, and in our judgment that construction is the correct one for the following reasons:

*First*—The eighteenth clause expressly excepts the real estate described in the nineteenth clause when it confers upon the executors power to sell such property as is not specifically bequeathed or devised by the will and such property as might revert to the estate by the happening of some contingency mentioned in the will. Appellants' contention that the exception refers merely to the time when such property shall be sold and does not exclude it from the general power given to the executors to sell is not sustained by the phraseology adopted by the testator in the eighteenth clause.

*Second*—No language is found in the nineteenth clause which can be considered as authorizing the executors to sell the property therein described, or as authorizing them to divide any proceeds of the sale among the persons mentioned in the eighteenth clause. Appellants regard the words "net proceeds," as used in the nineteenth clause, as referring to the net proceeds of a sale of the property. Obviously those words, as used in that clause, refer to the net proceeds derived from the rents. The executors are directed to lease the property and to first pay taxes, assessments, repairs, insurance, and the costs and charges connected with leasing the property and collecting the rents, and to then divide the "net proceeds" according to the distribution directed in clause 18. The items directed to be first paid are mostly annual charges against the real estate. The intention of the testator, therefore, undoubtedly was that the rents derived from the property should each year be first applied to the payment of the items of expense enumerated, and the

balance, being the net proceeds of the rents, should be distributed annually among the persons and in the proportions as specified in the eighteenth clause.

*Third*—The testator in the sixteenth clause of the will used language which in express terms directed the executors, after the death or re-marriage of the widow, to dispose of the property therein described in accordance with the provisions of the eighteenth clause. Had he intended that the property described in the nineteenth clause should be disposed of in the same manner he certainly would have used language equally clear in expressing such intention.

*Fourth*—The distribution contemplated by the eighteenth clause was evidently one which might be made during the widowhood of Magdalena Thomas, since she was to receive one-fourth of all sums distributed under that clause, and it clearly appears to have been the intention of the testator that the interest of his widow in his estate should be reduced in case of her re-marriage. The property described in the nineteenth clause was to be leased by the executors until the death or re-marriage of the widow. Had the testator not excepted that property from the power of sale and distribution provided by the eighteenth clause, when the time arrived for such sale and distribution of this property the widow would have been either dead or re-married, and the proceeds, in the event of her death, could not have been paid to her, and in the event of her marriage her interest in the testator's estate would have been thereby increased instead of diminished. In our judgment the testator had this in mind when he inserted the exception in the eighteenth clause, and specifically and intentionally excepted this property from the general power of sale in the eighteenth clause in order that it might, after the death or re-marriage of the widow, pass to his children and their descendants in accordance with the statute of descent of this State. A contrary construction would give to the descendants of his widow, Magdalena Thomas, resulting from her

marriage to Holdner, (which was her first marriage,) who are strangers to the blood of the testator, an interest in his estate. There is nothing in the will to show any intention on the part of the testator to give any of his property to such descendants of his widow.

We are not unmindful of the rule that in determining the intention of the testator the presumption of law is that he intended by his will to dispose of all his property and to leave none as intestate estate, yet, as said in *Wixon* v. *Watson*, 214 Ill. 158, "this is only a presumption and cannot be permitted to overcome the expressed language of the will."

The decree of the circuit court will be affirmed.

*Decree affirmed.*